**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARNELL WILLIAMS,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:23-651** |
| **v.** | : | **(JUDGE MANNION)** |
| **SUPERINTENDENT RANSOM, *et al.*,** | : | |
| **Respondents** | : | |

## MEMORANDUM

Respondents filed a response to *pro se* Petitioner Darnell Williams ("Williams")'s petition for a writ of habeas corpus under 28 U.S.C. §2254 in which they argue that he failed to timely file his petition. Because Respondents' response did not address certain events in Williams's underlying criminal case potentially impacting the Court's timeliness determination, the Court ordered them to submit a supplemental response in which they would substantively address those undiscussed events as well as attach all documents pertaining to those events. Respondents timely submitted a supplemental response; however, as explained below, their supplemental response did not comply with the Court's Order. As such, the Court will direct Respondents to file a second supplemental response in

which they provide the Court with the necessary record upon which to address the timeliness of Williams's Section 2254 habeas petition.

# I. BACKGROUND

## A. State Court Proceedings

A jury sitting in the Court of Common Pleas of Dauphin County ("CCP") convicted Williams of third-degree murder (18 Pa. C.S. §2502(c)) and carrying a firearm without a license (18 Pa. C.S. §6106) on December 13, 2013. *See* (Doc. 1 at 1–2); *Commonwealth v. Williams*, No. 1106 MDA 2014, 2015 WL 7015833, at *1 (Pa. Super. Ct. June 8, 2015) (unpublished) ("*Williams I*"). The CCP described the facts underlying those convictions as follows:

> On the evening of June 14, 2011, Thorrin Burgess ("Burgess") was shot in the abdomen on a basketball court at Reservoir Park in Harrisburg, and shortly thereafter died as a result. The evidence at trial established that on the day of the homicide, Burgess, his brother Darrien Burgess, and several of their friends, including Michael Warren and Brandon Wright, were playing basketball at Reservoir Park. At some point, Darrien and an individual nicknamed Jersey began to fight. When Darrien began to get the better of Jersey, Williams struck Darrien with a handgun. Burgess intervened and pleaded with Williams before ultimately tussling with him. During the tussle they both went to the ground and Williams shot Burgess.
>
> The Commonwealth also presented physical evidence that connected Williams to the killing. Angela Difiore, a forensic DNA scientist with the Pennsylvania State Police, testified that she examined fingernail clipping taken from Burgess and was able to obtain a DNA sample. She compared that sample to a known

DNA sample taken from Williams, and concluded that Williams' DNA was present.

*Williams I*, at *1 (quoting June 2, 2014 Trial Ct. Op. at 1–2).

On February 27, 2014, the CCP sentenced Williams to an aggregate period of incarceration for a minimum of twenty-two years to a maximum of forty-four years. *See* (Doc. 1 at 1); *Williams I*, at *1. Williams then filed post-sentence motions, which the CCP denied on June 2, 2014. *See Williams I*, at *1; *see also* Docket, *Commonwealth v. Williams*, No. CP-22-CR-3969-2011 (Dauphin Cnty. Ct. Com. Pl.) ("CCP Dkt.").[1] On July 2, 2014, Williams filed an appeal from his judgment of sentence to the Pennsylvania Superior Court in which he raised challenges to the sufficiency of the evidence, the weight of the evidence, and the imposition of his sentence. *See* (Doc. 1 at 2); *Williams I*, at *1. The Superior Court rejected those challenges and

[1] The Court takes judicial notice of the docket from Williams's underlying criminal case and any appeals therefrom. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (unpublished) ("We may take judicial notice of the contents of another Court's docket."); *Mickell v. Lycoming Cnty. Cent. Collections Off. & Admin.*, 821 F. App'x 74, 75 (3d Cir. 2020) (unpublished) (taking judicial notice of Court of Common Pleas criminal docket); *Wilson v. McVey*, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). These dockets are publicly accessible through the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch). *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)).

affirmed Williams's judgment of sentence via an unpublished Memorandum Opinion issued on June 8, 2015. *See Williams I*, at *1–9. Williams then sought further review by filing a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on December 17, 2015. *See* (Doc. 1 at 2); *Commonwealth v. Williams*, 128 A.3d 1207 (Pa. 2015) (table); *Commonwealth v. Williams*, No. 367 MDA 2018, 2018 WL 4705613, at *1 (Pa. Super. Ct. Oct. 2, 2018) (unpublished) ("*Williams II*"). It does not appear that Williams filed a petition for a writ of *certiorari* with the United States Supreme Court.

Having been unsuccessful on direct appeal, Williams began pursuing state post-conviction collateral relief by filing a *pro se* petition under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. §§9541–46 ("PCRA"), on March 21, 2016. *See* (Doc. 1 at 3); *Williams II*, at *2. Because it was Williams's first PCRA petition, the PCRA Court appointed counsel to represent Williams, and appointed counsel later filed an amended PCRA petition. *See* (Doc. 1 at 12); *Williams II*, at *2; *see also* Pa. R. Crim. P. 904(C) ("Except as provided in paragraph (H), when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief."). In the

amended PCRA petition, Williams asserted that his trial counsel was ineffective for failing to call Daquan Lorenso Bell ("Bell") as a witness at trial. *See* (Doc. 1 at 3); *Williams II*, at *2. The PCRA Court later held an evidentiary hearing on this claim, during which only Williams' trial counsel testified. *See Williams II*, at *2.

On January 29, 2018, the PCRA Court issued a memorandum and order denying Williams's amended PCRA petition. *See* (Doc. 1 at 3); *Williams II*, at *2. Williams timely filed a notice of appeal from this denial to the Superior Court on February 21, 2018. *See* (Doc. 1 at 4); *Williams II*, at *3. On appeal, Williams argued that the PCRA Court erred in denying his amended PCRA petition alleging that his trial counsel was ineffective for failing to call Bell as a witness. *See Williams II*, at *3. On October 2, 2018, the Superior Court issued an unpublished Memorandum Opinion concluding that the PCRA correctly rejected Williams's ineffective-assistance-of-counsel claim and affirming the denial of his amended PCRA petition. *See id.* at *3–6. Williams then sought discretionary review by filing a petition for allowance of appeal with the Pennsylvania Supreme Court, which denied the petition on April 17, 2019. *See Commonwealth v. Williams*, 206 A.3d 1029 (Pa. 2019) (table); *Commonwealth v. Williams*, No. 640 MDA 2020, 2021 WL 2312776, at *1 (Pa. Super. Ct. June 7, 2021) (unpublished) ("*Williams III*"). It does not

appear that Williams then filed a petition for a writ of certiorari with the United States Supreme Court. *See Williams III*, at *3 n.5.

While Williams's appeal from the denial of his first PCRA petition was pending, he filed a counseled petition on July 12, 2018, in which he sought to amend his first PCRA petition to include an after-discovered evidence claim, namely, that he possessed written statements from two individuals stating that a different person, Charles Tate ("Tate"), shot the victim. *See Williams III*, at *1; CCP Dkt. A year later, on July 12, 2019, Williams filed a counseled second PCRA petition in which he raised the same claims. *See Williams III*, at *1; CCP Dkt.

The CCP held evidentiary hearings on Williams's second PCRA petition on August 20, 2019, September 5, 2019, October 4, 2019, and November 1, 2019. *See Williams III*, at *1; CCP Dkt. Approximately a month after the last evidentiary hearing, Williams filed a petition to amend his second PCRA petition to include after-discovered evidence from a third witness who also named Tate as the shooter. *See Williams III*, at *1; CCP Dkt. A few days later, the CCP scheduled an evidentiary hearing, which it ultimately held on January 29, 2020. *See Williams III*, at *1; CCP Dkt.

The CCP denied Williams's second PCRA petition via a Memorandum and Order issued on April 14, 2020. *See Williams III*, at *2; CCP Dkt. On April

20, 2020, Williams timely appealed from this decision to the Superior Court, and he argued that the CCP erred when it denied his amended second PCRA petition based on after-discovered evidence. *See Williams III*, at *2; CCP Dkt. On June 7, 2021, the Superior Court, after determining that the CCP had jurisdiction to consider Williams's second PCRA petition, agreed with the CCP that Williams "failed to establish that the new evidence would likely compel a different verdict at trial" and affirmed the denial of his amended second PCRA petition. *See Williams III*, at *2–5. Williams then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on December 28, 2021. *See Commonwealth v. Williams*, 270 A.3d 425 (Pa. 2021) (table).

It also appears that on June 21, 2021, which was after the Superior Court affirmed the denial of Williams's amended second PCRA petition but prior to him filing a petition for allowance of appeal with the Pennsylvania Supreme Court, he filed another petition to amend his amended second PCRA petition with the CCP. *See* CCP Dkt. On August 12, 2021, the CCP issued a notice of intent to dismiss this filing, although it is unclear from the docket whether the CCP construed it as Williams's third PCRA petition. *See id.* Williams timely filed objections to the CCP's notice of intent to dismiss on

September 1, 2021. *See id.* The CCP issued an Order dismissing Williams' petition to amend on December 7, 2021. *See id.*

On January 5, 2022, Williams timely filed an appeal from the CCP's dismissal of his petition to amend to the Superior Court. *See id.* However, Williams discontinued his appeal on April 12, 2022. *See* Docket, *Commonwealth v. Williams*, No. 51 MDA 2022 (Pa. Super. Ct.). He then filed another counseled petition to amend his second PCRA petition with the CCP on May 20, 2022. *See* CCP Dkt.

Williams's counsel filed a motion seeking to have the CCP appoint new counsel to represent Williams on September 6, 2022, which the CCP granted and appointed new counsel on September 9, 2022. *See id.* On February 3, 2023, Williams's new PCRA counsel filed a motion to withdraw. *See id.* On June 29, 2023, the CCP issued an Order dismissing Williams's operative PCRA petition. *See id.* Williams did not appeal from this Order. *See id.*

On September 7, 2023, Williams filed a *pro se* motion for discovery, and the Commonwealth filed an answer to this motion on November 14, 2023. *See id.* On November 21, 2023, the CCP issued an Order denying Williams's motion for discovery. *See id.*

It appears from the docket that Williams filed another, yet unidentified, *pro se* motion on December 26, 2023. *See id.* The CCP entered an Order denying Williams's motion on February 5, 2024. *See id.*

### B. Federal Proceedings

Williams commenced the instant action by filing his *pro se* Section 2254 habeas petition on April 17, 2023. (Doc. 1.)[2] In his petition, Williams asserts the following claims: (1) his trial counsel was ineffective for failing to call a witness who would have testified they witnessed someone other than Williams shoot the victim; (2) he is entitled to a new trial based on the newly discovered evidence from the three witnesses he identified during his PCRA proceedings. *See* (Doc. 1 at 5–12).

---

[2] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). Unfortunately, when filing his habeas petition, Williams did not include a declaration stating when he delivered the petition to prison authorities for mailing to the Clerk of Court. Nonetheless, the envelope containing the petition is postmarked April 17, 2023. *See* (Doc. 1 at 14). As such, the Court uses April 17, 2023, as the petition's filing date even though the Clerk of Court did not docket it until April 19, 2023. *Cf.* Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

The Court notes that Williams also filed an application for leave to proceed *in forma pauperis* ("IFP Application") along with his habeas petition. (Doc. 1.) However, Williams later paid the filing fee (Doc. 8), and, consequently, the Court dismissed his IFP Application as moot (Doc. 11).

On May 25, 2023, the Court issued an Order informing Williams, pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and *Mason v. Myers*, 208 F.3d 414 (3d Cir. 2000), of the relevant time limit for filing a Section 2254 habeas petition and the limits on filing second or successive Section 2254 petitions, and directing him to complete and return a Notice of Election form indicating whether he wishes for the Court to rule on his motion as filed, whether he would like to withdraw the motion, or whether he wanted to take other relevant action. (Doc. 9.) On July 10, 2023, Williams returned a signed notice of election indicated that he wanted the Court to rule on his habeas petition as filed and did not wish to withdraw it to later file a comprehensive petition. (Doc. 10.)

The following day, the Court issued an Order which, *inter alia*, directed Respondents to file a response to Williams's habeas petition. (Doc. 11.) On July 24, 2023, Respondents filed a timely response to Williams's habeas petition in which they argued that the Court should dismiss his petition as untimely. *See* (Doc. 13 at 3–5).

On August 8, 2023, Williams filed a motion to appoint counsel (Doc. 14), which the Court denied by Order dated August 21, 2023 (Doc. 15). On March 6, 2024, Williams filed a letter in which he (1) indicated that he was transferred to another state correctional facility, (2) explained that he never

received Respondents' response to his habeas petition, and (3) requested an opportunity to file a reply brief. (Doc. 17.) The Court construed Williams's letter as a motion to be served with Respondents' response and granted this motion via an Order entered on April 4, 2024. (Doc. 18.)

On May 22, 2024, Williams filed a motion to enforce the Court's April 4, 2024 Order, in which he pointed out that he still had not received Respondents' response and requested that the Court issue another Order directing Respondents to serve him with their response. (Doc. 19.) On the same date, Respondents filed an answer to Williams's motion in which they indicated that they mailed their response to him that day. (Doc. 20.) Based on Respondents' answer, the Court issued an Order dismissing Williams's motion to enforce as moot on June 7, 2024. (Doc. 21.)

Williams filed a motion for an extension of time to file his reply brief on June 12, 2024 (Doc. 22), and the Court granted this motion on July 18, 2024 (Doc. 23). Williams timely filed his reply brief on August 19, 2024. (Doc. 24.) In his reply, Williams argues that he timely filed his habeas petition. *See* (*id.* at 1–2).

After reviewing the parties' submissions, the Court issued an Order on February 18, 2025, which noted that, in arguing that Williams's petition is untimely, Respondents "describe[d] events occurring through Williams filing

a second [PCRA] petition . . ., the denial of the second petition, and Williams's appeals from that denial, which ultimately concluded with the Pennsylvania Supreme Court denying his petition for allowance of appeal on December 28, 2021." (Doc. 27 at 1.) The Court also noted that Williams pointed out in his reply brief that he had filed a third PCRA petition and amended third PCRA petition and explained that:

> The events relating to Williams's third PCRA petition and amended third PCRA petition are highly relevant to whether he timely filed the instant Section 2254 petition because "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any limitations period under [28 U.S.C. §2244(d)]." 28 U.S.C. §2244(d)(2). Whether Williams's third PCRA petition or third amended PCRA petition were "properly filed" for Section 2244(d)(2) tolling purposes largely depends on whether the PCRA court deemed them to have been timely filed. *See Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir.) (explaining that a "properly filed" PCRA petition tolls Section 2244(d)(1)'s limitations period only if it is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing"), *cert. denied sub nom.*, *Horn v. Fahy*, 534 U.S. 944 (2001). An untimely PCRA petition is not "properly filed" and cannot statutorily toll the federal limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 413–17 (2005).

(*Id.* at 2–3.) As such, "[s]ince the outcome of this habeas action appear[ed] to be dependent on events starting with the filing of Williams's third PCRA petition," the Court directed Respondents to address "these events and their impact on the timeliness of Williams's habeas petition in this case" and "file

with the Court copies of all documents docketed in Williams's criminal case starting with his third PCRA petition through the PCRA court's dismissal of his amended third PCRA petition on June 29, 2023." (*Id.* at 3); *see also* (*id.* at 4 ("Respondents shall attach to their supplemental brief copies of all documents docketed in Williams's criminal case, . . . starting with Williams's third PCRA petition through and including the PCRA court's denial of his amended third PCRA petition on June 29, 2023."). The Court also provided Williams with the opportunity to file a response to Respondents' supplemental submission. (*Id.*)

Respondents filed a motion for an extension of time to file their supplemental response (Doc. 29), which the Court later granted (Doc. 33). Respondents then timely filed their supplemental response on March 24, 2025. (Doc. 30.) In their supplemental response, Respondents indicate that they "disagree" with the Superior Court's conclusion that the CCP had jurisdiction to consider Williams's second PCRA petition because Williams pleaded and proved a time-bar exception. *See* (*id.* ¶¶10, 11). Additionally, they possibly reference Williams's third and amended third PCRA petitions in only the following two paragraphs:

> . . . The Commonwealth notes that during the pendency of the appeal from the denial of [Williams]'s second PCRA petition, as set forth above, [Williams] filed a petition to amend his PCRA petition on June 21, 2021, which the PCRA court denied

> pursuant to [*Commonwealth v. Montgomery*, 181 A.3d 359 (Pa. Super. Ct.) (en banc), *appeal denied*, 190 A.3d 1134 (Pa. 2018)], on December 7, 2021—thus, this filing was insufficient to trigger any tolling.
>
> . . . Based on the above analysis, any further PCRA petition was irrelevant as [Williams] was already well past his 365 days afforded under the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")].

(*Id.* ¶¶19–20.) They did not, however, file with the Clerk of Court any documents relating to Williams's third PCRA petition through the CCP's denial of his amended third PCRA petition.

On April 15, 2025, Williams filed a reply to Respondents' supplemental response. (Doc. 31.) In his reply, Williams again argues that he timely filed his habeas petition. *See* (*id.* at 1–2).

## II. DISCUSSION

At the outset, there are three fundamental issues with Respondents' supplemental submission. First, they did not comply with the Court's February 18, 2025 Order by attaching copies of documents in Williams's criminal case relating to his third PCRA petition through the resolution of his amended third PCRA petition to their supplemental response. The Court notes that this was not an isolated incident, as they also did not comply with the Court's July 11, 2023 Order, which required them to, *inter alia*, submit "copies of . . . any PCRA petitions" along with their answer/response to

Williams's habeas petition. (Doc. 11 at 2.)[3] Regardless, without those documents, the Court cannot properly address the timeliness of Williams's habeas petition. Accordingly, the Court will, yet again, direct Respondents to submit all documents pertaining to Williams' third PCRA petition.

Second, Respondents' disagreement with the Superior Court's conclusion regarding the timeliness of Williams's second PCRA petition is irrelevant. Federal courts are bound by a state court's determination that a habeas petitioner's state-court filing was timely or untimely. *See Pace*, 544 U.S. at 417 ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed' [for purposes of 28 U.S.C. §2244(d)(2)], and he is not entitled to statutory tolling under §2244(d)(2)."); *Merritt v. Blaine*, 326 F.3d 157, 167–68 (3d Cir. 2003) (holding that petitioner's PCRA petition was not "properly filed" because the Pennsylvania Superior Court determined that the PCRA petition was untimely); *Bennett v. Arizona Dep't of Corr.*, No. 20-cv-181, 2021 WL 4875859, at *5 (D. Ariz. May 20, 2021) ("[F]or purposes of statutory tolling, if a state court determines a filing 'was

---

[3] This Order also directed Respondents to submit copies of Williams's briefs on appeal and copies of any opinions by the Pennsylvania appellate courts. *See* (*id.* at 2). Yet, all Respondents attached to their response were a copy of the docket sheet for Williams's criminal case and copies of the decisions by the Pennsylvania Superior Court and the Pennsylvania Supreme Court addressing his second PCRA petition. *See* (Docs. 13-1–13-3).

timely or untimely, we are bound by that decision.'" (quoting *Valdez v. Montgomery*, 918 F.3d 687, 692 (9th Cir. 2019))), *report and recommendation adopted sub nom. Bennett v. Shinn*, 2021 WL 4861396 (D. Ariz. Oct. 19, 2021). Therefore, despite Respondents' disagreement with the Superior Court's determination that Williams timely filed his second PCRA petition, this Court is bound by the Superior Court's determination when analyzing whether, and to what extent, he is entitled to statutory tolling under Section 2244(d)(2) based on his second PCRA petition and related proceedings.

Third, Respondents incorrectly argue that Williams's filing of a third PCRA petition is "irrelevant." (Doc. 30 ¶20.) AEDPA provides for a one-year statute of limitations, which, as pertinent here, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). When calculating the commencement of the statute of limitations for purposes of Section 2244(d)(1)(A), the Court must determine when Williams's criminal judgment became final.

"Under §2244(d)(1)(A), a state court criminal judgment becomes 'final' and the statute of limitations begins to run, 'at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review

expires.'" *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999) (quoting *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) and citing *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999)). Here, Williams's criminal judgment became final on March 16, 2016, which was ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal on December 17, 2015, and he did not seek further review by the United States Supreme Court. *See* U.S. Sup. Ct. R. 13 (requiring a petition for a writ of certiorari to be filed "within 90 days after the entry of the order denying discretionary review"); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."). Therefore, Williams had one year from March 16, 2016, to file a Section 2254 petition unless any statutory tolling period applies.[4]

---

[4] The Court recognizes that equitable tolling could also impact the timeliness of a habeas petition. *See Holland v. Florida*, 560 U.S. 631, 634, 649 (2010) (explaining that AEDPA's one-year statute of limitations is subject to equitable tolling "in appropriate cases" and indicating that a "'petitioner' is

*(footnote continued on next page)*

Concerning statutory tolling, AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2). A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). "State prisoners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate

---

'entitled to equitable tolling' only if [they] show[] '(1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way' and prevented timely filing" (quoting *Pace*, 544 U.S. at 418 (emphasis removed in original)); *see also Pace*, 544 U.S. at 419 (explaining that "[u]nder long-established principles, [a] petitioner's lack of diligence" will "preclude[] equity's operation" (citations omitted)); *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (explaining that equitable tolling may be appropriate if (1) the petitioner has been "actively misled[;]" (2) the petitioner "has in some extraordinary way been prevented from asserting his rights;" or (3) the petitioner "has timely asserted his rights mistakenly in the wrong forum" (quoting *Fahy*, 240 F.3d at 244)); *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) ("[T]here are no bright lines in determining whether equitable tolling is warranted in a given case. Nevertheless, courts must be sparing in their use of equitable tolling, and should do so only when the principles of equity would make the rigid application of a limitation period unfair." (internal quotation marks and citations omitted)). However, Williams never argues that he is entitled to equitable tolling in his petition, his reply brief, or in his supplemental brief.

constitutional claims that are more than one year old in federal court." *Fahy*, 240 F.3d at 243. If the state court dismisses a late-filed application for post-conviction collateral review because it is time-barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes. *See Merritt*, 326 F.3d at 165–66.

Here, Williams timely filed a PCRA petition in the CCP on March 21, 2016. At the time Williams filed his first PCRA petition, five days of the one-year AEDPA limitations period had passed. However, once Williams timely filed his first PCRA petition, the limitations period remained tolled until the conclusion of those proceedings in the Pennsylvania state courts. *See* 28 U.S.C. §2244(d)(2).

Williams's first PCRA proceedings concluded with the Pennsylvania Supreme Court denying his petition for allowance of appeal on April 17, 2019. He then filed a counseled second PCRA petition on July 12, 2019, meaning that eighty-six additional days (and ninety-one days in total) of AEDPA's one-year limitations period had likely also run.[5] As already stated,

---

[5] It does not appear that Williams's filing of a counseled petition to amend his first PCRA petition on July 12, 2018, which was while his appeal from the CCP's denial of his first PCRA petition was pending before the Superior Court, can legally constitute his second PCRA petition because it was an improper filing. *See Williams III*, at *3 (explaining that Williams's "attempt[] to commence an amendment to his first PCRA petition while the

*(footnote continued on next page)*

the Superior Court determined that Williams's timely filed his second PCRA petition, so AEDPA's limitations period was statutorily tolled until December 28, 2021, when the Pennsylvania Supreme Court denied his petition for allowance of appeal from the Superior Court's affirmance of the CCP's denial of his amended second PCRA petition. At that point, Williams had two hundred and seventy-four days, *i.e.*, until September 28, 2022, to file a timely habeas petition unless he is entitled to additional statutory tolling.

Considering that the docket from Williams's criminal case shows that he filed what appears to be an improperly filed petition to amend his second PCRA petition with the CCP on June 21, 2021, and indicates that events transpired in the CCP (including the filing of a document that might be construed as a third PCRA petition on May 20, 2022), through at least June

---

denial of his first petition was on appeal . . . was improper," and determining that the CCP erred by "apparently h[olding] it in abeyance" rather than dismissing it); *see also Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) (concluding that a PCRA petitioner cannot file a subsequent PCRA petition while their PCRA appeal is pending, and "[i]f the subsequent petition is not filed within one year of the date when the judgment became final, then the petitioner must plead and prove that one of the three exceptions to the time bar under 42 Pa. C.S. §9545(b)(1) applies [and file] . . . the subsequent petition . . . within sixty days of the date of the order which finally resolves the previous PCRA petition, because this is the first 'date the claim could have been presented.'" (quoting 42 Pa. C.S. §9545(b)(2))), *overruled on other grounds by Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020); *Commonwealth v. Beatty*, 207 A.3d 957, 961 (Pa. Super. Ct. 2019) (explaining that a PCRA court cannot hold in abeyance a subsequent PCRA petition filed while a first PCRA appeal was pending).

29, 2023, which would be after the filing date of Williams's habeas petition in this case, those events are relevant to this Court's timeliness determination. It appears that, if the CCP treated any of these submissions as timely filed, they could also toll the applicable limitations period. On the other hand, if the CCP determined that Williams's submissions were untimely (and thus not "properly filed"), it appears that Williams's instant habeas petition is untimely because he would have filed it two hundred and one days after AEDPA's one-year limitations period expired. As such, it is incumbent on Respondents to address the impact, if any, of Williams's filings on the timeliness analysis and provide this Court with the documents pertaining to these events so the Court can determine the timeliness of Williams's habeas petition.

Overall, Respondents have failed to comply with two of this Court's Orders thus far. Nevertheless, the Court will provide them with another opportunity to comply because, at a minimum, the Court needs to review the state court record to properly analyze whether Williams timely filed his habeas petition in this case.

## III. CONCLUSION

For the reasons stated above, the Court will issue an Order directing Respondents to submit copies of ***all*** filings appearing on the docket in Williams's criminal case, starting with Williams's June 21, 2021 petition to

amend his second PCRA petition, up to and including the CCP's dismissal Order entered on June 29, 2023. The Court will also direct Respondents to file a second supplemental response in which they substantively address Williams's filings and their impact, if any, on the timeliness of his habeas petition in this case. The Court will also provide Williams with the opportunity to file a response to Respondents' second supplemental submission. An appropriate Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/26/26
23-0651-01